# REAL ESTATE PURCHASE CONTRACT

This REAL ESTATE PURCHASE CONTRACT (this "Contract") is entered into this ___ day of _____, 2018 (the "Effective Date "), subject to approval of the Bankruptcy Court (defined below), between Karia Y. WM Houston, Ltd., a Texas limited partnership ("Debtor" and "Seller"), and Irtanki Trading, LLC, or its nominee or affiliate ("Buyer"). Buyer and Seller are also each referred to herein individually as a "Party" and collectively as the "Parties." Galen M. Hair, Esq., Scott, Vicknair, Hair & Checki, LLC, 909 Poydras Street, Suite 1100, New Orleans, LA 70112 ("Escrow Agent") and _____ (the "Title Company") is a party to this Contract only to the extent of acknowledging receipt of the Earnest Money (defined below) and a fully executed copy of this Contract by Seller and Buyer.

In consideration of the mutual covenants set forth herein and in consideration of the Purchase Price, as hereinafter defined, the receipt and sufficiency of which are hereby acknowledged by Seller, the Parties hereby agree as follows:

A. **Sale and Purchase**

Upon approval of the Bankruptcy Court for the Southern District of Texas, Houston Division ("Bankruptcy Court"), Seller shall sell, convey, and assign to Buyer, free and clear of all liens, claims, other than the liens of American First National Bank and Harris County for 2018 property taxes which are to be assumed by Buyer, and Buyer shall purchase and accept from Seller, for the Purchase Price and on and subject to the terms and conditions herein set forth, the tracts or parcels of land situated in Harris County, Texas, described in Exhibit A hereto, together with all rights and interests appurtenant thereto, including all of Seller's right, title, and interest in and to any and all water rights, adjacent roads, minerals, streets, alleys, easements, rights of way and appurtenances; any and all site plans, soil and substrata studies, architectural drawings, plans and specifications and engineering and environmental reports currently in Seller's possession; and any and all development rights, permits, licenses or other appraisals regarding the same (all of the foregoing, collectively, the "Land"); and any and all improvements and fixtures located on the Land, as applicable; the "Improvements", together with the Land, are collectively referred to hereafter as the "Property". Buyer agrees to purchase the Property on an "as-is" basis in accordance with the terms of this Contract.

B. **Purchase Price**

The total purchase price (the "**Purchase Price**") for the sale and purchase of the Property is the sum of approximately $6.4 million compromised of the following amounts (i) the reinstatement and assumption of the loans payable to American First National Bank, as modified of approximately $4.0 million, (ii) assumption of the lease with Bayou Social Club, LLC dba Prime Social Poker Club, as modified in Seller's Chapter 11 Plan, (iii) payment to the Debtor of sufficient funds to pay any balance owed with respect to Allowed Claims in Classes 1, 2, 3, 5 and 6 estimated to be approximately $150,000; (iv) waiver of its right to distribution on its $2.1 million proof of claim asserted in Seller's Chapter 11 bankruptcy case no. 18-30521 pending In the United

{871016/00320/01258484.DOCX 4 }

States Bankruptcy Court for the Southern District of Texas, Houston Division ("Bankruptcy Case") and (v) payment of costs of sale.

**C.    Earnest Money**

Purchaser has deposited the sum of Three Hundred and Fifty Thousand and No/100 Dollars ($350,000.00) with Escrow Agent as earnest money (the "Earnest Money") to bind this sale. At the Closing of this sale any cash held by the Escrow Agent as the 'Earnest Money shall be applied towards the cash portion of the Purchase Price to be paid by Buyer hereunder. If Buyer shall fail to timely deposit any portion of the Earnest Money, then this Agreement shall terminate at Seller's option.

**D.    Title and Survey**

1.    Review of Title. The following statutory notice is provided to Buyer on behalf of the real estate licensees, if any, involved in this transaction:

BUYER IS ADVISED THAT IT SHOULD EITHER HAVE THE ABSTRACT COVERING THE PROPERTY EXAMINED BY AN ATTORNEY OF BUYER'S OWN SELECTION AND/OR BE FURNISHED WITH OR OBTAIN A POLICY OF TITLE INSURANCE.

2.    Delivery of Title Commitment. Buyer may obtain a Title Policy at its own expense.

**E.    Inspection**

1.    Entry onto the Property. Buyer and its agents shall have the right to enter the Property at all reasonable times prior to Closing to inspect or survey the Property, subject to the following:

   a.    If any portion of the Property is altered because of Buyer's entry, Buyer shall return the Property to its prior condition promptly after the alteration occurs;

   b.    Buyer shall deliver to Seller copies of all inspection reports and Survey(s) that Buyer prepares or receives from third-party consultants or contractors within five (5) days of their preparation or receipt, as applicable; and Seller.

   c.    Buyer shall abide by any other reasonable entry rules imposed by Seller.

2.    Cooperation. Seller shall cooperate with Buyer before Closing, with any reasonable evaluation, inspection, audit, or study of the Property prepared by, for, or at the request of Buyer.

**F.    Representations**

1.    Buyer's Representations, Warranties, and Covenants. Buyer hereby represents and warrants to Seller as follows:

   a.    Buyer is a validly existing business entity duly formed and authorized to do all things required of it under the terms of this Contract.

{871016/00320/01258484.DOCX 4 }

b.  The consummation of the transactions contemplated hereby have been duly and validly authorized by all necessary company action on the part of Buyer, and this Contract is a valid and binding obligation of Buyer enforceable (subject to normal equitable principles) in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, debtor relief or similar laws affecting the rights of creditors generally.

c.  No consent, approval or authorization of, or filing of a registration with, any governmental or regulatory authority, or any other person or entity is required to be made or obtained by Buyer in connection with the execution, delivery or performance of this Contract or the consummation of the transactions contemplated hereby.

d.  All negotiations relative to this Contract and the transactions contemplated hereby have been carried on by Buyer and its counsel directly with Seller and its counsel, without the intervention by any other person as the result of any act of Buyer in such a manner as to give rise to any valid claim against any of the Parties hereto for any brokerage commission, finder's fee or any similar payments.

2.  Seller's Representations, Warranties, and Covenants. Seller hereby represents and warrants to, and covenants with, Buyer that:

a.  Seller, as a condition of this sale, will seek a final order from the Bankruptcy Court under 11 U.S.C. § 363, in substantially the same form attached hereto as Exhibit C, approving this Contract and authorizing the consummation of the transactions contemplated herein including, without limitation, the sale and conveyance of the Property to Buyer free and clear of any and all liens, claims, and interests with any liens, other than the liens of American First National Bank and Harris County for 2018 property taxes which are to be assumed by Buyer. The 363 Sale shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Seller or his representatives except for the express representations contained in the purchase agreement (the "Sale Order").

b.  Seller is currently undergoing restructuring under the applicable provisions of the United States Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

c.  Upon entry of the Sale Order, this Contract is a valid and binding obligation of Seller enforceable (subject to normal equitable principles) in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, debtor relief or similar laws affecting the rights of creditors generally.

d.  Upon entry of the Sale Order, Seller has full right, power, and authority to execute and deliver this Contract and to consummate the purchase and sale transaction provided for herein without obtaining any further consents or approvals from, or the taking of any other actions with respect to, any other third parties.

e. Upon entry of the Sale Order, Seller will be able to transfer good, marketable and indefeasible title in fee simple to the Property, free and clear of all liens, claims, interests or encumbrances other than the liens of American First National Bank and Harris County for 2018 property taxes which are to be assumed by Buyer.

f. The copies of all documents delivered by or on behalf of Seller to Buyer pursuant to this Contract shall be true and complete in all material respects and, to the best of Seller's knowledge and belief, the information contained therein shall be true and complete in all material respects.

g. Seller has not, nor, to Seller's knowledge, has any other Person for whose conduct Seller is or may be held responsible, received any citation, directive, inquiry, notice, order, summons, warning or other communication that relates to hazardous activity, Hazardous Materials, or any alleged, actual, or potential violation or failure to comply with any Environmental Law, or of any alleged, actual, or potential obligation to undertake or bear the cost of any environmental liabilities with respect to the Property.

h. Seller has delivered to Buyer true and complete copies and results of any reports, studies, analyses, tests, or monitoring possessed or initiated by Seller, if any, pertaining to Hazardous Materials or hazardous activities in, on, or under the Property, or concerning compliance by Seller or any other Person for whose conduct it is or may be held responsible, with Environmental Laws.

i. There is no condemnation, expropriation or other proceeding in eminent domain pending or, to Seller's knowledge, threatened, affecting the Property or any portion thereof or interest therein. There is no injunction, decree, order, writ or judgment outstanding, nor any claim, litigation, administrative action or similar proceeding pending, or to Seller's knowledge, threatened, relating to the ownership, lease, or use of the Property or any portion thereof.

j. Seller has not retained a broker or agent in connection with this Contract and no commissions or fees shall be paid.

PURCHASER IS RELYING ON ITS OWN DUE DILIGENCE INVESTIGATION IN MAKING ITS DECISION TO PURCHASE THE PROPERTY AND, EXCEPT AS SET FORTH ABOVE, HAS NOT RELIED ON ANY REPRESENTATIONS OR WARRANTIES OF SELLER OR ANYONE ACTING ON BEHALF OF SELLER, EXCEPT FOR THE WARRANTY OF TITLE WHICH WILL BE SET FORTH IN THE DEED AND THE REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS AGREEMENT. EXCEPT AS SET FORTH IN THE DEED AND IN THIS AGREEMENT, THE PROPERTY IS BEING SOLD "AS IS" "WHERE IS" AND WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT,

SELLER MAKES NO REPRESENTATION OR WARRANTY AS TO WHETHER THE PROPERTY IS IN VIOLATION OF ANY CITY, STATE OR FEDERAL LAWS, RULES, CODES, ORDERS, REGULATIONS OR ORDINANCES (COLLECTIVELY CALLED "LAWS"), INCLUDING, WITHOUT LIMITATION, ANY LAWS RELATING TO THE ENVIRONMENTAL CONDITION OF THE PROPERTY. THIS PROVISION SHALL SURVIVE THE CLOSING.

  1. Seller's representations, warranties and covenants stated in this Section F are true and correct as of the Effective Date and shall be true and correct on the date of the entry of the Sale Order. All of Seller's representations and warranties shall survive Closing.

**G.** **Condition of the Property until Closing; Condemnation**

  1. Maintenance and Operation. Until Closing, Seller shall (a) maintain the Property as it exists on the Effective Date, and (b) comply with all contracts and governmental regulations affecting the Property.

  2. Condemnation. Seller shall notify Buyer promptly after Seller receives notice that any part of the Property has been or is threatened to be condemned or otherwise taken or revoked by any Governmental Body. Buyer may terminate this Contract if the condemnation would materially affect Buyer's intended use of the Property by giving notice to Seller within fifteen (15) days after receipt of Seller's notice to Buyer (or before Closing if Seller's notice is received less than fifteen (15) days before Closing). If Buyer does not terminate this Contract, (a) Buyer and Seller shall each have the right to appear and defend their respective interests in the Property in any condemnation proceedings, (b) any award in condemnation shall be assigned to Buyer, and (c) if the taking occurs before Closing, the description of the Property shall be revised to delete the portion taken.

  3. Claims; Hearings. Seller shall notify Buyer promptly of any claim or administrative hearing that is threatened, filed, or initiated before Closing that affects the Property.

**H.** **Closing**

The closing of the sale of the Property by Seller to Buyer ("Closing") shall occur on or as of a date within 21 days after entry of the Sale Order ("Closing Date "), unless otherwise extended by written agreement of the Parties. Time is of the essence with regard to the Closing Date. The Closing shall occur at the offices of the Title Company, commencing at 10:00 a.m. on the Closing Date. Except as may be waived, each of the following, which are mutually concurrent conditions, shall occur at the Closing:

1. Buyer, at its sole cost and expense, shall deliver or cause to be delivered to

  a. The Purchase Price; and

  b. Evidence of Buyer's authority to close the transaction contemplated by this Contract.

{871016/00320/01258484.DOCX 4 }

2.  Seller, at its sole cost and expense, shall deliver or cause to be delivered to Buyer the following:

   a.  A Special Warranty Deed in the form of Exhibit B hereto, fully executed and acknowledged by Seller, conveying to Buyer the Property;

   b.  A Sale Order entered by the Bankruptcy Court in substantially the same form attached hereto as Exhibit C;

   c.  Such other documents as provided by American First National Bank to effectuate the assumption of the American First National Bank obligations.

The documents referred to in 1 and 2 above are each referred to individually as a "Closing Document " and collectively, as the "Closing Documents."

3.  All normal and customarily pro-ratable items, including without limitation real estate and personal property taxes (2018 property taxes to be paid by Buyer when due), building association assessments, utility bills, rents, interest, and property agreement payments shall be prorated as of the Closing Date, Seller being charged and credited for all of same up to such date and Buyer being charged and credited for all of same on and after such date. If the actual amounts to be prorated are not known as of the Closing Date, the prorations shall be made on the basis of the best evidence then available, and thereafter, when actual figures are received, a cash settlement will be made between Seller and Buyer. The provisions of this Section H.3. shall survive Closing.

4.  Seller shall pay all costs and liabilities relating to the Property that arise out of or are attributable to the period prior to the Closing Date. Seller shall have the right to receive all proceeds relating to the Property that are properly allocable to the period before the Closing Date, and Buyer shall have the right to receive all proceeds relating to the Property that are properly allocable to the period from and after the Closing Date. Buyer shall pay all costs and liabilities relating to the Property that arise out of or are attributable to the period from and after the Closing Date, except such costs and liabilities that arise out of or result from a breach by Seller of its representations and warranties set forth in Section F hereof. This Section H.4. shall survive Closing.

5.  Delivery of Property. Upon completion of the Closing, Seller shall deliver to Buyer possession of the Property free and clear of all tenancies of every kind and parties in possession other than the lease with Bayou Social Club which is assumed, as modified in the Plan, by Buyer.

6.  Transaction Costs.

   a.  Seller's Costs. Seller shall pay all of the escrow fee charged by Title Company; the costs to prepare the Warranty Deed; the costs to obtain, deliver, and record releases of all liens to be released at Closing; the costs, if any, to obtain the certificates or reports of ad valorem taxes; and Seller's expenses and attorney's fees.

   b.  Buyer's Costs. Buyer shall pay Buyer's expenses and attorney's fees.

**I.  Default and Remedies**

{871016/00320/01258484.DOCX 4 }

1. Seller's Default. If Seller fails to perform any of its obligations under this Contract or if any of Seller's representations are not true and correct as of the Effective Date or on the Closing Date ("Seller's Default"), Buyer may elect either of the following as its sole and exclusive remedy:

    a. Termination; Liquidated Damages. Buyer may terminate this Contract by giving written notice to Seller on or before the Closing Date.

2. Buyer's Default. If Buyer fails to perform any of its obligations under this Contract, or if any of Buyer's representations are not true and correct in all material respects as of the Effective Date or on the Closing Date ("Buyer's Default"), Seller may as its sole and exclusive remedy terminate this Contract.

3. Attorney's Fees. If either Party retains an attorney to enforce this Contract, the Party prevailing in litigation is entitled to recover reasonable attorney's fees and court and other costs.

4. Duties after Termination. If this Contract is terminated, Buyer shall promptly return to Seller all documents relating to the Property that Seller has delivered to Buyer and all copies that Buyer has made of any such documents. After return of the documents and copies, if any, neither Party will have further duties or obligations to the other under this Contract, except for those obligations that expressly or by context provide herein that they shall survive termination of this Contract.

**J.  Miscellaneous Provisions**

1. Definitions.

    a. As used in this Contract, each of the following capitalized words and phrases shall have the meaning set forth below:

        i. "Bayou Social Club, LLC dba Prime Social Poker Club Lease" means that new lease agreement between Irtanki Trading, LLC and Bayou Social Club, LLC dba Prime Social Poker Club, attached to the Chapter 11 Plan as Exhibit 7.

        ii. "Chapter 11 Plan" means the First Amended Combined Plan of Liquidation and Disclosure Statement filed in the Bankruptcy Case on July 30, 2018 at Docket No. 77, as Modified on the Record on August 3, 2018.

        iii. "Environmental Law" shall mean any Legal Requirement relating to the protection of the air, surface water, groundwater or land, and/or governing the handling, use, generation, treatment, storage or disposal of Hazardous Materials, but not including any Legal Requirement enforced by the Occupational Safety and Health Administration (or by any state, provincial, local, domestic or foreign equivalent of the Occupational Safety and Health Administration).

        iv. "Governmental Body" shall mean any federal, state, local, foreign or other governmental or administrative body, instrumentality, department or agency or any court, tribunal or administrative hearing.

v.      "Hazardous Materials" means each and every element, compound, chemical mixture, contaminant, pollutant, material, waste or other substance which is defined, determined or identified as hazardous or toxic by a Governmental Body or the release of which is regulated. Without limiting the generality of the foregoing, the term will include (a) "hazardous substances" as defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, as amended, and regulations promulgated thereunder, (b) "extremely hazardous substances" as defined in the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. § 11049, as amended, and regulations promulgated thereunder, (c) "hazardous waste" as defined in the United States Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6903, as amended, and regulations promulgated thereunder, (d) "hazardous materials" as defined in the United States Hazardous Materials Transportation Act of 1975, 49 U.S.C. § 5102, as amended, and regulations promulgated thereunder, (e) any "chemical substance or mixture" subject to the United States Toxic Substances Control Act, 15 U.S.C. §§ 2602, et seq., as amended, and regulations promulgated thereunder, and (f) asbestos.

vi.     "Person" shall mean an individual, partnership, corporation, limited liability company, unincorporated organization, association, joint venture, estate, trust, association, organization, labor union, or other entity or Governmental Body.

vii.    "Proceeding" shall mean any proceeding, action, claim, charge, appeal, compliant, arbitration, investigation, litigation, or suit (including any civil, criminal, administrative, investigative, or appellate proceeding) commenced, brought, conducted, or heard by or before any Governmental Body.

viii.   "Survey" means an on the ground, staked plat of survey and metes and bounds description of the Land, prepared by a surveyor of Buyer's choice, dated after the Effective Date showing all easements and encroachments on the Land, including whether there are any wetlands on the Land and whether any of the Land lies within the 100-year flood plain and showing the amount of square feet in and out of the flood plain.

ix.     "Title Commitment' means a Commitment for Issuance of an Owner Policy of Title Insurance by the Title Company, as agent for Underwriter, stating the condition of title to the Land. The "effective date" stated in the Title Commitment must be after the Effective Date of this Contract.

x.      "Title Policy" means a TLTA Owner Policy of Title Insurance covering the Land issued by Title Company, as agent for Underwriter, in conformity with the last Title Commitment delivered to and approved by Buyer.

   b. Other terms defined in this Contract shall have the meanings so given them.

2. Notices. Any notice required by or permitted under this Contract must be in writing. Any notice required by this Contract will be deemed to be delivered (whether actually received or not) when deposited with the United States Postal Service, postage prepaid, certified mail, return receipt requested, and addressed to the intended recipient at the address shown in this Contract. Notice may also be given by regular mail, personal delivery, courier delivery, facsimile transmission, or 'other commercially reasonable means and will be effective when actually received. Any address for notice may be changed by written notice delivered as provided herein. Copies of each notice must be given by one of these methods to the attorney, if any, of the Party to whom notice is given. For purposes of notice, the addresses of the Parties shall be as follows:

If to Seller: Karia Y WM Houston, Ltd.
Attn:


Phone: (__) _____.

With a copy to:
Hoover Slovacek, LLP
Attn: Melissa A. Haselden
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, TX 77056


If to Buyer:



With a copy to:



3. Entire Contract. This Contract, together with its exhibits, and any Closing Documents delivered at Closing constitute the entire agreement of the Parties concerning the sale of the Property by Seller to Buyer. There are no oral representations, warranties, agreements, or promises pertaining to the sale of the Property by Seller to Buyer not incorporated in writing in this Contract.

4. Captions. The captions and headings used herein are for reference purposes only and shall not affect the meaning or interpretation of the terms and provisions of this Contract.

5. Amendment. This Contract may be amended only by an instrument in writing signed by the Parties.

{871016/00320/01258484.DOCX 4 }

6.   Assigns; Beneficiaries. This Contract shall inure to the benefit of and be binding on the Parties hereto and their respective heirs, legal representatives, successors, and assigns. This Contract is for the sole benefit of Seller and Buyer, and no third party is intended to be a beneficiary of this Contract.

7.   Survival. The obligations of this Contract that cannot be performed before termination of this Contract or before Closing will survive termination of this Contract or Closing, and the legal doctrine of merger will not apply to these matters. If there is any conflict between the Closing Documents and this Contract, the Closing Document(s) shall control.

8.   Governing Law. THIS CONTRACT SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS OTHERWISE APPLICABLE TO SUCH DETERMINATIONS. The Bankruptcy Court shall be the exclusive venue for resolution of any disputes regarding this Contract.

9.   Waiver of Default. It is not a waiver of default if the non-defaulting Party fails to declare immediately a default or delays taking any action with respect to the default.

10.   Severability. This is an entire contract and is not severable.

11.   Ambiguities Not to Be Construed Against Drafting Party. The Parties having participated jointly in the negotiation and drafting of this Contract, no rule of construction that ambiguities in a document are to be construed against the party who drafted it will be applied in interpreting this Contract.

12.   No Special Relationship. The Parties' relationship is an ordinary commercial relationship, and they do not intend to create the relationship of principal and agent, partnership, joint venture, or any other special relationship.

13.   Counterparts. This Contract may be executed in a number of identical separate counterparts (including by facsimile transmission or by other electronic means showing execution by a Party), each of which for all purposes is to be (i) deemed an original; and (ii) as effective as delivery of a manually executed counterpart, but all of which shall constitute, collectively, one Contract.

**[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]**

IN WITNESS WHEREOF, Buyer and Seller have executed this Contract as of the date first set forth above.

**SELLER:**

**KARIA Y WM HOUSTON, LTD.**
a Texas limited partnership

By    Tony Z WM Houston LLC,
       a Texas limited liability company

By: _____
Name:
Title:

**BUYER:**

**IRTANKI TRADING LLC,**
a Texas limited liability company

By:

By: _____
Name:
Title:

Title Company acknowledges receipt of a copy of this Contract executed by both Buyer and Seller.

TITLE COMPANY:

By:_____
Name:
Title:

**EXHIBIT A**

Land Description:

**ALL OF UNRESTRICTED RESERVE "A", BLOCK 1, WESTHEIMER AT STONEY BROOK, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 624200 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.**

**EXHIBIT B**

**SPECIAL WARRANTY DEED**

{871016/00320/01258484.DOCX 4 }

**EXHIBIT "B"**

AFTER RECORDING RETURN TO:

_____

_____

_____

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## **SPECIAL WARRANTY DEED**

| STATE OF TEXAS | § | |
|---|---|---|
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |

THAT Karia Y WM Houston, Ltd., a Texas limited partnership, (the "**Grantor**"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to it paid by Irtanki Trading, LLC ("**Grantee**"), the receipt and sufficiency of which are hereby acknowledged and confessed by Grantor, has GRANTED, BARGAINED, SOLD and CONVEYED, and by this deed does hereby GRANT, BARGAIN, SELL and CONVEY unto Grantee the tract of land lying and being situated in Houston, Harris County, Texas, as more particularly described on **Exhibit A** attached hereto and incorporated herein for all purposes (the "**Property**").

This conveyance is made and accepted subject to the exceptions set forth on **Exhibit B**, attached hereto and made a part hereof for all purposes (the "**Permitted Exceptions**").

TO HAVE AND TO HOLD THE PROPERTY, together with all and singular the rights and appurtenances belonging in any way to the Property, subject to the provisions stated herein, to Grantee, Grantee's successors and assigns forever, and Grantor binds itself and its legal representatives and successors TO WARRANT AND FOREVER DEFEND all and singular the

Property to Grantee and Grantee's successors and assigns against every person lawfully claiming or to claim all or any part of the Property, by, through or under Grantor but not otherwise.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT: (i) GRANTEE HAS CONDUCTED ITS OWN

INDEPENDENT INVESTIGATION AND INSPECTION OF ALL ASPECTS OF THE PROPERTY, (ii) OTHER THAN AS EXPRESSLY SET OUT HEREIN OR IN THAT CERTAIN PURCHASE AND SALE AGREEMENT DATED _____, 2018, BY AND BETWEEN GRANTOR AND GRANTEE ("**PURCHASE AGREEMENT**"), GRANTEE IS NOT RELYING ON ANY REPRESENTATIONS OR STATEMENTS OF GRANTOR OR ITS AGENTS, (iii) GRANTEE IS RELYING ON SUCH INDEPENDENT INVESTIGATION AND INSPECTION AND IS NOT RELYING ON ANY INFORMATION PROVIDED BY GRANTOR, GRANTOR'S ENGINEERS OR THE BROKERS IN DETERMINING WHETHER TO PURCHASE THE PROPERTY, (iv) CERTAIN INFORMATION PROVIDED BY GRANTOR TO GRANTEE WITH RESPECT TO THE PROPERTY HAS BEEN OBTAINED FROM A VARIETY OF SOURCES AND THAT GRANTOR HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION, (v) GRANTEE IS FULLY AND COMPLETELY SATISFIED THAT THE PROPERTY IS SATISFACTORY IN ALL RESPECTS FOR GRANTEE'S INTENDED USE AND GRANTEE HAS NO RECOURSE WHATSOEVER AGAINST GRANTOR OR THE BROKER IN CONNECTION WITH THE PROPERTY OTHER THAN FOR ANY VIOLATIONS AS TO THE WARRANTIES AND COVENANTS OF GRANTOR CONTAINED IN THE PURCHASE AGREEMENT.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT: (i) EXCEPT FOR THE SPECIAL WARRANTY SET OUT HEREIN OR THE EXPRESS REPRESENTATIONS SET OUT IN THE PURCHASE AGREEMENT, GRANTOR HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY, INCLUDING BUT NOT LIMITED TO: (A) THE NATURE, QUALITY, OR CONDITION OF THE PROPERTY, (B) THE INCOME TO BE DERIVED FROM THE PROPERTY; (C) THE SUITABILITY OF THE PROPERTY FOR ALL AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY CONDUCT THEREON IN THE FUTURE; (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ALL' APPLICABLE GOVERNMENTAL AUTHORITY OR BODY, INCLUDING, BUT NOT LIMITED TO, ANY STATE OR FEDERAL ENVIRONMENTAL LAW, RULE OR REGULATION; (E)THE HABITABILITY, MERCHANTABILITY, OR FITNESS OF THE PROPERTY FOR A PARTICULAR PURPOSE; OR (F) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY (COLLECTIVELY, THE "**DISCLAIMED MATTERS**"). GRANTEE HEREBY WAIVES ANY SUCH OTHER REPRESENTATION, WARRANTY, PROMISES, COVENANTS, AGREEMENTS, OR GUARANTIES.

AS A MATERIAL PART OF THE CONSIDERATION FOR THIS DEED, GRANTEE ACKNOWLEDGES AND AGREES THAT NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, EXCEPT FOR THE SPECIAL WARRANTY CONTAINED HEREIN OR AS EXPRESSLY SET OUT IN THE PURCHASE AGREEMENT, GRANTOR IS CONVEYING THE PROPERTY TO GRANTEE "AS IS", "WHERE IS", AND WITH ALL FAULTS AND SPECIFICALLY AND EXPRESSLY WITHOUT ANY WARRANTIES, REPRESENTATIONS, OR GUARANTEES, EITHER EXPRESS OR IMPLIED, OF ANY KIND, NATURE, OR TYPE WHATSOEVER FROM OR ON BEHALF OF THE GRANTOR.

WITHOUT IN ANY WAY LIMITING ANY PROVISION OF THE FOREGOING, GRANTEE SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES, RELEASES AND DISCHARGES ANY CLAIM IT HAS, MIGHT HAVE HAD OR MAY HAVE AGAINST GRANTOR AND GRANTOR'S PARTNERS, OFFICERS AND AGENTS WITH RESPECT TO (i) THE DISCLAIMED MATTERS, (ii) THE CONDITION OF THE PROPERTY, EITHER PATENT OR LATENT, (iii) THE PAST, PRESENT OR FUTURE CONDITION OR COMPLIANCE OF THE PROPERTY WITH REGARD TO ANY ENVIRONMENTAL PROTECTION, POLLUTION CONTROL OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION AND LIABILITY ACT OF 1980 (HEREIN CALLED "**CERCLA**"), AND (iv) ANY OTHER STATE OF FACTS THAT EXISTS WITH RESPECT TO THE PROPERTY; PROVIDED, HOWEVER, THE FOREGOING WAIVER, RELEASE AND DISCHARGE DOES NOT WAIVE, RELEASE, OR DISCHARGE ANY CLAIM GRANTEE MAY HAVE AGAINST GRANTOR UNDER THE SPECIAL WARRANTY SET FORTH IN THIS DEED OR FOR BREACH OF THE EXPRESS REPRESENTATIONS (DURING THE PERIOD FOR WHICH SUCH EXPRESS REPRESENTATIONS SURVIVE) SET FORTH IN THE PURCHASE AGREEMENT.

Current ad valorem taxes, assessments and fees relating to or pertaining to the Property, are hereby assumed by Grantee.

The mailing address of Grantee is set forth below:

[Signatures Appear on Following Page]

IN WITNESS WHEREOF, Grantor has caused this Special Warranty Deed to be executed on this _____ day of _____, 2018.

        Grantor

        KARIA Y WM HOUSTON, LTD.
        a Texas limited partnership

        By Tony Z WM Houston LLC,
           a Texas limited liability company

        By: _____
        Name:
        Title:

| STATE OF TEXAS | § |
|---|---|
|  | § |
| COUNTY OF HARRIS | § |

The foregoing was acknowledged before me on the _____ day of _____ 2018, by_____, Member of Tony Z WM Houston, LLC, General Partner of Karia Y WM Houston, Ltd, in such capacity.

        _____
        Notary Public, State of Texas

Special Warranty Deed - Exhibit A

**ALL OF UNRESTRICTED RESERVE "A", BLOCK 1, WESTHEIMER AT STONEY BROOK, A SUBDIVISION INHARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 624200 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.**

{871016/00320/01258484.DOCX 4 }

**Special Warranty Deed - Exhibit B**

**PERMITED EXCEPTIONS**

**(TO BE SUPPLEMENTED)**

**EXHIBIT C**

**FORM OF SALE ORDER**

**(TO BE SUPPLEMENTED)**

{871016/00320/01258484.DOCX 4 }